634 A.2d 1

George THOMAS

v.

STATE of Maryland.

No. 20, Sept. Term, 1992.

Court of Appeals of Maryland.

Dec. 6, 1993.

Reconsideration Denied Jan. 11, 1994.

John L. Kopolow, Asst. Public Defender (Stephen E. Harris, Public Defender, both on brief), Baltimore, for appellant.

David P. Kennedy, Asst. Atty. Gen. (J. Joseph Curran, Jr., Atty. Gen., both on brief), Baltimore, for appellee.

Argued before ELDRIDGE, RODOWSKY, McAULIFFE, CHASANOW, KARWACKI, and ROBERT M. BELL, JJ., and CHARLES E. ORTH, Jr., Judge of the Court of Appeals (retired), Specially Assigned.

McAULIFFE, Judge.

George Thomas was convicted in the Circuit Court for Caroline County of two counts of common law battery, reckless endangerment, unlawful use of a telephone, and violation of an order to vacate the family home. Judge J. Owen Wise sentenced him to consecutive terms of 20 and 30 years in prison for the two battery convictions, 60 days for violating the order to vacate, six months for unlawful use of the telephone, and a concurrent five-year term for reckless endangerment; a total of 50 years and eight months imprisonment.

The defendant appealed to the Court of Special Appeals. We issued a writ of certiorari prior to consideration of the case by that Court, to resolve the following questions:

1. Were the 30– and 20–year sentences for common law battery illegal, disproportionate under the common law, or unconstitutional?

2. Was the evidence sufficient to sustain defendant's conviction for telephone misuse?

I.

The defendant and his wife, Shirlene Thomas, lived together in Ridgely, Maryland, with Shirlene's daughter, 12–year–old Martisha Stansbury. At the end of March, 1991, George and Shirlene received a $284 tax refund check made out to them jointly. George insisted that the check was his to cash, and on March 29, a fight ensued. When Shirlene found out on April 1 that George had indeed cashed the refund check at a nearby liquor store, she confronted him about the money. "That day," Shirlene testified, "was just push and shoving and getting like iron pipes and aluminum bats...." Although each party threatened to injure the other with a baseball bat, neither resorted to violence at that time.

Later that evening George and Shirlene argued in their bedroom. At one point, Shirlene left the bedroom, entered Martisha's room, and instructed her daughter to call the police. Chief Cropper, of the Ridgely Police Department, arrived at the Thomas house at approximately 1:50 a.m. on

April 2, broke up the fight between George and Shirlene, and removed the baseball bats that were brandished earlier. After Chief Cropper departed, the argument resumed and at some point George slapped Shirlene across her face,[1] leaving a temporary mark on her cheek.

After this incident, Shirlene obtained a two-day protective order, and on April 5 she obtained an order requiring George to vacate the family home for 30 days.

On April 8, George violated the protective order and returned to the Ridgely property. He approached Shirlene outside the house and accused her of committing adultery in the home two days earlier. She ran up the steps to the house and he followed her into the kitchen. At the height of the altercation, George grabbed a steam iron and hit Shirlene on the top of her head with it. He then hit her twice in the back with the iron. Shirlene was taken to a hospital, where an 8 cm. laceration of her scalp was sutured. She remained hospitalized for two days for observation. A paramedic testified that there were lacerations on the back of her head and two bruises in the center of the upper area of her back. Immediately after the assault, the defendant turned himself in to the Denton Police Department. According to Chief of Police William C. Davis, the defendant admitted hitting Shirlene on the head with the iron and said he feared that he may have killed her.

Various charges brought against the defendant were consolidated for trial in the Circuit Court for Caroline County. The defendant elected to be tried by the court, and Judge Wise found him guilty of battery for slapping his wife on April 2,

---

1. The testimony is conflicting as to the exact sequence of events leading up to, and following, the slap. Martisha testified that George slapped Shirlene after Chief Cropper left the house, then Shirlene cut George with a knife. George testified that Shirlene hit him with a lamp, cutting his hand. He then went to the bathroom to clean his wound, stayed there for a number of minutes, and returned to the living room where Shirlene and Martisha were sitting on the sofa. He says it was at this point that he slapped her. Shirlene testified that George slapped her first, then she hit him with the lamp.

guilty of battery but not guilty of assault with intent to murder for striking her with the iron on April 8, guilty of reckless endangerment for swinging the iron,[2] guilty of unlawful use of a telephone, and violation of an order to vacate. Judge Wise imposed the sentences we have set forth above, and in so doing stated that the purpose of the long sentences was not to send a "message" to the defendant, "but to send him away as long as is necessary to protect [his wife,] which essentially is the balance of her life, not his."

## II.

The defendant challenges the consecutive sentences of 20 years and 30 years imposed for the batteries of April 2 and April 8. He contends that the sentences violate the prohibition against cruel and unusual punishment established by the federal and state constitutions; violate a Maryland common law requirement of proportionality; and, because they are to run consecutively, result from an abuse of discretion on the part of the trial judge. Additionally, he contends the 30–year sentence is illegal because it exceeds the 10–year sentence that would have been the maximum possible sentence if the victim had died and the defendant had been convicted of manslaughter.

■ The defendant bases his claim of illegality of sentence on the principles of *Simms v. State*, 288 Md. 712, 421 A.2d 957 (1980), and upon the statement made by the trial judge that if the victim had died the defendant could have been convicted of no more serious offense than manslaughter. In *Simms*, this Court held, as a matter of Maryland common law, that:

> [W]hen a defendant is charged with a greater offense and a lesser included offense based on the same conduct, with jeopardy attaching to both charges at trial, and when the defendant is convicted only of the lesser included charge, he may not receive a sentence for that conviction which ex-

---

2. The defendant has not raised any issue concerning the propriety of his conviction and concurrent sentence for reckless endangerment.

ceeds the maximum sentence which could have been imposed had he been convicted of the greater charge. *Id.* at 724, 421 A.2d 957. In the case before us, the only "greater offense" with which the defendant was charged as a result of the April 8 incident was assault with intent to murder. He was found not guilty of that offense, and applying the *Simms* principle to that set of facts results in the conclusion that the trial judge could not lawfully impose a sentence for the lesser included battery that exceeded the maximum sentence then prescribed for the greater offense. The maximum sentence for assault with intent to murder was, at the time of the offense, and is now, 30 years. Maryland Code (1957, 1992 Repl. Vol.) Art. 27, § 12. It is therefore clear that the mandate of *Simms* does not operate to bar the sentence of 30 years that was imposed for the April 8 battery.

The defendant points out, however, that in finding him not guilty of assault with intent to murder, the trial judge stated that if the victim had died, the defendant could have been convicted of no more serious offense than manslaughter. He argues that because 10 years imprisonment is the maximum penalty for manslaughter, we should extend the *Simms* principle so as to create a limitation of 10 years on the sentence for battery. We decline to do so. *Simms* has direct application only when a greater offense has been charged and jeopardy has attached with respect to that greater offense. *See Johnson v. State,* 310 Md. 681, 531 A.2d 675 (1987) (a *nolle prosequi* of an aggravated assault after jeopardy attaches is the same as an acquittal for *Simms* purposes, and the cap for the *nolle prossed* charge applies); *Gerald v. State,* 299 Md. 138, 472 A.2d 977 (1984) (defendant's 15–year term for assault was illegal under *Simms* in light of the 10–year maximum for the accompanying charge of robbery); *Turner v. State,* 45 Md. App. 168, 411 A.2d 1094, *cert. denied,* 288 Md. 745 (1980) (12–year assault sentence legal even though the maximum for robbery was 10 years because the defendant was not charged with robbery). *See also Sutton v. State,* 886 F.2d 708 (4th Cir.1989), *cert. denied,* 494 U.S. 1036, 110 S.Ct. 1493, 108 L.Ed.2d 628 (1990) (limitation established by *Simms* not appli-

cable where greater offense not charged). Were we to apply the *Simms* rule anytime a greater offense might have been charged, we would in effect create a binding hierarchy of offenses and sentences, a task that is truly a legislative one. We will, however, refer again to the philosophy of *Simms* when considering the defendant's claims that the sentences are impermissibly disproportionate.

## III.

### A.

We turn to the defendant's contention that the sentences imposed for the two convictions of battery offend constitutional protections against cruel and unusual punishment. The Eighth Amendment to the United States Constitution provides:

> Excessive bail shall not be required, nor excessive fines imposed, nor cruel and unusual punishments inflicted.

Article 25 of the Maryland Declaration of Rights, directed at action by the courts, contains similar language. It provides:

> That excessive bail ought not to be required, nor excessive fines imposed, nor cruel or unusual punishment inflicted, by the Courts of Law.

Article 16 of the Maryland Declaration of Rights, directed toward legislative action, provides:

> That sanguinary Laws ought to be avoided as far as it is consistent with the safety of the State; and no Law to inflict cruel and unusual pains and penalties ought to be made in any case, or at any time, hereafter.

The defendant argues that each sentence here challenged is grossly disproportionate when measured against the offense and relevant surrounding circumstances, and is therefore invalid under either the federal or state constitution. Alternatively, he suggests that if the Court does not agree that the sentences violate the Eighth Amendment to the federal constitution this Court should take a more expansive view of the protections afforded by the state constitution. He grounds his

argument for enhanced priority under the state constitution first on policy grounds, and second on the fact that Article 25 of the Declaration of Rights protects against cruel *or* unusual punishment, whereas the Eighth Amendment protects only against cruel *and* unusual punishment.

In *Solem v. Helm,* 463 U.S. 277, 284, 103 S.Ct. 3001, 3006, 77 L.Ed.2d 637 (1983), the Supreme Court held that the Eighth Amendment protection against cruel and unusual punishment "prohibits not only barbaric punishments, but also sentences that are disproportionate to the crime committed." Quoting from *Weems v. United States,* 217 U.S. 349, 367, 30 S.Ct. 544, 549, 54 L.Ed. 793 (1910), the Court noted that "it is a precept of justice that punishment for crime should be graduated and proportioned to offense. . . ." *Solem, supra,* 463 U.S. at 287, 103 S.Ct. at 3008. The Court further stated that:

> [A] court's proportionality analysis under the Eighth Amendment should be guided by objective criteria, including (i) the gravity of the offense and the harshness of the penalty; (ii) the sentences imposed on other criminals in the same jurisdiction; and (iii) the sentences imposed for commission of the same crime in other jurisdictions.

*Id.* at 292, 103 S.Ct. at 3010. The Justices cautioned that:

> Reviewing courts, of course, should grant substantial deference to the broad authority that legislatures necessarily possess in determining the types and limits of punishments for crimes, as well as to the discretion that trial courts possess in sentencing convicted criminals.

*Id.* at 290, 103 S.Ct. at 3009 (footnote omitted). Recognizing that perfect proportionality was not required, the Court condemned as unconstitutional only those sentences that are "grossly disproportionate," or "significantly disproportionate." *Id.* at 288, 303, 103 S.Ct. at 3008, 3016.

*Harmelin v. Michigan,* 501 U.S. 957, 111 S.Ct. 2680, 115 L.Ed.2d 836 (1991), a plurality decision containing five separate opinions, clouds somewhat the waters of Eighth Amendment proportionality jurisprudence. It seems clear, however,

that a majority of the Justices continue to hold that proportionality is a component of the Eighth Amendment's protection against cruel and unusual punishment. Although it is argued that *Harmelin* narrowed *Solem* in some respects, it is apparent that a majority of the justices in *Harmelin* would go at least as far as holding that:

> [T]he Eighth Amendment does not require strict proportionality between crime and sentence. Rather, it forbids only extreme sentences that are "grossly disproportionate" to the crime.

*Harmelin, supra,* 501 U.S. at ——, 111 S.Ct. at 2705 (Kennedy, J., concurring) (quoting in part *Solem, supra,* 463 U.S. at 288, 303, 103 S.Ct. at 3008, 3016).

Justice Kennedy's concurring opinion in *Harmelin* also states that because impermissible disproportionality will rarely be found, most cases can be resolved by a threshold comparison of the crime committed to the sentence imposed, and a more detailed comparative analysis within and between jurisdictions will be required only when the threshold comparison suggests gross disproportionality.

> [I]ntra- and inter-jurisdictional analyses are appropriate only in the rare case in which a threshold comparison of the crime committed and the sentence imposed leads to an inference of gross disproportionality.

> \* \* \* \* \* \*

> The proper rule for comparative analysis of sentences, then, is to validate an initial judgment that a sentence is grossly disproportionate to a crime.

*Harmelin,* 501 U.S. at ——, 111 S.Ct. at 2707.

The approach outlined by Justice Kennedy's opinion in *Harmelin* is consistent with the approach we earlier approved in *State v. Davis,* 310 Md. 611, 530 A.2d 1223 (1987). In *Davis,* we said that "the substantive issue of whether Davis's sentence is constitutionally proportionate also involves a question of process, namely, the breadth and depth of the required proportionality review in relation to Davis's sentence and criminal record." *Id.* at 628, 530 A.2d 1223. We then conclud-

ed that "based on Davis's current and ... predicate convictions [under a recidivist statute], on the seriousness of the crime, and on comparisons to other sentences adjudicated to be constitutional," an extensive proportionality review under *Solem* was not appropriate, and the sentence of life without parole was not unconstitutional. *Id.* at 631–32, 530 A.2d 1223.

More recently, in his concurring opinion in *Minor v. State,* 313 Md. 573, 546 A.2d 1028 (1988), Judge Eldridge said:

Furthermore, I do not believe that the Supreme Court's opinions require that we classify all criminal sentences into two categories, one involving no proportionality analysis and the other involving a particular form of extended proportionality analysis utilizing three, and only three, criteria. As Justice Powell indicated for the Court in *Solem,* all criminal sentences are subject to Eighth Amendment proportionality review but only rarely will an extensive review be required. Common sense and experience teach that, in a vast majority of cases, an appellate court, faced with an Eighth Amendment contention, can quickly reach the conclusion that the sentence is not constitutionally disproportionate to the crime. Beyond those cases, the degree of review required may vary from case to case; one case may require much more extensive analysis than another.

*Id.* at 587, 546 A.2d 1028 (citation omitted).

 In considering a proportionality challenge, a reviewing court must first determine whether the sentence appears to be grossly disproportionate. In so doing, the court should look to the seriousness of the conduct involved, the seriousness of any relevant past conduct as in the recidivist cases, any articulated purpose supporting the sentence, and the importance of deferring to the legislature and to the sentencing court. *See Davis,* 310 Md. at 631–32, 530 A.2d 1223, and *Minor,* 313 Md. at 583–84, 546 A.2d 1028.

 If these considerations do not lead to a suggestion of gross disproportionality, the review is at an end. If the sentence does appear to be grossly disproportionate, the court should engage in a more detailed *Solem*-type analysis. It may conduct an intra- and inter-jurisdictional analysis as a vehicle

for comparison and as a source of objective standards; it must, however, remember that under principles of federalism, a state legislature may choose to impose a more severe penalty than other states consider appropriate. In order to be unconstitutional, a punishment must be more than very harsh; it must be *grossly* disproportionate. This standard will not be easily met.

■ A reviewing court is also free to consider other relevant factors that may not have been specifically mentioned by *Solem.* For instance, the court may consider the ramifications of the offense upon society as a whole, as in *Harmelin.* Likewise, any evidence of an improper motive on the part of the sentencing judge deserves attention. In addition, the penological theory of the State may be relevant.

Nearly 100 years ago, when considering a claim that a sentence was cruel or unusual within the meaning of Article 25 of the Maryland Declaration of Rights, this Court said:

> Our law inflicts pain not in a spirit of vengeance, but to promote the essential purposes of public justice. Severity is not cruelty. The punishment ought to bear a due proportion to the offence. Crimes of great atrocity ought to be visited with such penalties as would check, if not prevent their commission. It is impossible in the abstract to mark the boundaries which separate cruelty from just severity. If the circumstances accompanying a crime are of unusual aggravation the punishment ought to be unusually severe.... Even where the law confides to the Judge the imposition of the sentence without definite limit, it still may be possible to violate the Declaration of Rights. If the punishment is grossly and inordinately disproportionate to the offence so that the sentence is evidently dictated not by a sense of public duty, but by passion, prejudice, ill-will or any other unworthy motive, the judgment ought to be reversed, and the cause remanded for a more just sentence.

*Mitchell v. State,* 82 Md. 527, 533–34, 34 A. 246 (1896).

■ In comparing the punishment to the offense, a court must consider the specific facts of the case, not only as to the crime but also as to the criminal.

As to excessiveness (proportionality), that can never be litigated in the abstract but must be assessed on a case-by-case basis. That an extremely lengthy prison sentence might be disproportionately excessive for most common law assault convictions does not establish, as a bright-line formula, that it would be disproportionately excessive for all common law assault convictions. We measure proportionality not by comparing the sentence with the label of the crime (that the sentence be within legal limits is a legal problem, not a constitutional problem) but by comparing the sentence with the behavior of the criminal and the consequences of his act. As an abstract proposition, no term of years for common law assault is *per se* and universally unconstitutional.

*Walker v. State*, 53 Md.App. 171, 193, 452 A.2d 1234 (1982). *See also State v. Bartlett*, 171 Ariz. 302, 307 n. 6, 830 P.2d 823, 828 n. 6, *cert. denied*, —— U.S. ——, 113 S.Ct. 511, 121 L.Ed.2d 445 (1992) (it is the circumstances of the crime and the criminal that must be considered in determining gross disproportion).

■ A criminal sentencing decision is never one easily made, and involves a plethora of considerations, both obvious and subtle. Thus, it would be illogical to conduct any review of a sentence using stringent and rigid standards. Only rarely should a reviewing court interfere in the sentencing decision at all, especially because the sentencing court is virtually always better informed of the particular circumstances. Thus, we emphasize that challenges based on proportionality will be seriously entertained only where the punishment is truly egregious. We recognize, however, that occasionally a sentence violates even that difficult standard, and the federal and state constitutions provide protection against such a punishment.

### B.

■ Applying these principles to the case before us, we first consider the challenge to the 20–year sentence imposed

for the battery of April 2. The sentence of 20 years for a battery that was literally no more than a slap appears, on threshold inquiry of the relevant circumstances, to be an impermissibly disproportionate punishment. Although marital abuse is not to be taken lightly in any form, the battery in this case did not result in any lasting physical injury, and cannot be considered legally "serious." The sentence is not the result of a recidivist history. The sentence was not based on any legislative or judicial decision to impose severe penalties to deter domestic violence because of its societal impact. In fact, the record indicates that the sentence was based on speculation by the trial judge concerning the life span of the victim. None of those considerations lend any legitimacy to a sentence that seems to be grossly disproportionate.

That conclusion is buttressed by consideration of other aggravating and mitigating factors and the inter- and intra-jurisdictional analysis. Although this Court and the Court of Special Appeals have sustained 20–year sentences for common law assault against both constitutional and legal attacks, *Walker, supra,* 53 Md.App. at 195, 199, 452 A.2d 1234, each of those cases involved assaults that were far more violent and aggravated than those presented in this case.[3] In other cases,

___

3. *See, e.g., Adair v. State,* 231 Md. 255, 256, 189 A.2d 618 (1963) (where defendant broke into victim's home with apparent intent to rape her, demanded food and money, slapped her when she screamed, grabbed her from behind and assaulted her with a paring knife, lacerating her chest, a 20–year sentence for assault did not constitute cruel and unusual punishment); *Walker v. State,* 53 Md.App. 171, 195, 452 A.2d 1234 (1982) (20–year sentence for common law assault was not unconstitutionally disproportionate in light of violent and aggravated nature of the assault, in the course of which defendant also committed burglary and attempted rape); *Brown v. State,* 38 Md.App. 192, 196, 379 A.2d 1231 (1977), *cert. denied,* 282 Md. 730 (1978) (20–year assault conviction upheld where defendant allegedly raped a mentally retarded 15–year–old girl); *Raley v. State,* 32 Md.App. 515, 526–27, 363 A.2d 261, *cert. denied,* 278 Md. 731 (1976), *cert. denied,* 431 U.S. 965, 97 S.Ct. 2921, 53 L.Ed.2d 1060 (1977) (20–year sentence for assault upheld where defendant shot and killed male friend of estranged wife, then turned gun on wife and shot her in the throat; acquitted of murder and assault with intent to kill, but found guilty of assault on wife); *Wilkins v. State,* 5 Md.App. 8, 22, 245 A.2d 80 (1967) (20–year sentence for

sentences of less than 20 years for assault were upheld, while the facts were far more aggravated than the domestic violence exhibited in the slap that occurred on April 2.[4]

 Comparison to penalties imposed by the legislature for certain aggravated assaults also forcefully suggests that the sentence imposed for this offense was grossly disproportionate. An assault with intent to maim, disfigure, or disable is currently punishable by a sentence not to exceed 15 years, and at the time of this offense the statutory maximum was 10 years. Maryland Code (1957, 1992 Repl. Vol.), Art. 27, § 386. As the State concedes, the conduct for which the defendant was convicted on this occasion is significantly less serious than

---

assault upheld where record disclosed that in addition to being robbed at gunpoint, victims were severely "pistol-whipped" and beaten).

**4.** *See, e.g., Austin v. Director,* 237 Md. 314, 317, 206 A.2d 145 (1965) (defendant convicted of assault and intent to ravish and carnally know, and of simple assault; 10–year sentence upheld against constitutional challenge); *Gleaton v. State,* 235 Md. 271, 277–78, 201 A.2d 353 (1963) (10–year sentence for assault upheld where defendant shot at three men, wounding all of them); *Duff v. State,* 229 Md. 126, 127, 182 A.2d 349, *cert. denied,* 371 U.S. 898, 83 S.Ct. 199, 9 L.Ed.2d 130 (1962) (10–year sentence for assault upheld where defendant, after an altercation with the victim, drew a pistol from his pocket, and while the unarmed victim was moving away from him, shot him twice in the arm and attempted to shoot him four more times); *Snead v. State,* 227 Md. 180, 181, 176 A.2d 220 (1961) (two five-year concurrent sentences upheld where drunken defendant assaulted his wife and son with a shotgun during a domestic fight); *Burley v. State,* 226 Md. 94, 96, 172 A.2d 394 (1961) (sentence of five years not unconstitutional in case where defendant broke into the home of his estranged wife, followed her to the backyard of her house, and stabbed her twice in the arm); *Shields v. State,* 224 Md. 485, 487, 168 A.2d 382 (1961) (eight-year sentence for assault upheld where defendant cut his brother with a razor during a fight); *Matthews v. State,* 68 Md.App. 282, 305, 511 A.2d 548, *cert. denied,* 308 Md. 238, 517 A.2d 1121 (1986) (15–year sentence for assault upheld in case where defendant robbed two victims and twice struck one of them with a gun he was carrying); *Turner v. State,* 45 Md.App. 168, 173, 411 A.2d 1094, *cert. denied,* 288 Md. 745 (1980) (12–year sentence for assault upheld where defendant accosted victim, threw him on the ground, searched his pockets, and removed his wallet); *Morgan v. State,* 4 Md.App. 351, 353, 242 A.2d 831 (1967) (14–year sentence for assault upheld where defendant threatened married couple, fired shots at the husband, and struck the wife with his hands, causing her to be hospitalized).

an assault with intent to maim, disfigure, or disable. As we pointed out in *Simms, supra,* because the defendant was not charged with this type of aggravated assault, the maximum statutory penalty for the aggravated assault does not, by operation of law, become the maximum penalty for the simple assault or battery. When it is clear, however, that the conduct underlying the simple assault or battery is in fact less serious than the assaultive conduct for which the legislature has fixed a maximum penalty, a penalty that exceeds the statutory maximum suggests disproportionality, and we give that fact heavy weight in this case.

The maximum statutory penalties for assault in other jurisdictions also indicate that the sentence of 20 years is disproportionate to the defendant's crime. In another jurisdiction, the slap inflicted upon Shirlene Thomas would be classified by statute as a misdemeanor-type simple assault, battery, or assault and battery, and would have carried a maximum sentence anywhere from one month, *see* N.D. Cent.Code §§ 12.1–17–01 and 12.1–32–01 (1985, 1993 Cum.Supp.), to two and one-half years, Mass.Gen. L. ch. 265, § 13A (1992). Although interstate comparisons are somewhat difficult because of the variety of ways in which states differentiate between aggravated and simple assaults and batteries, we append hereto a list of maximum penalties for simple assault and batteries in other states.

■ The State argues that the slap of April 2 cannot be considered in a vacuum; that the sentencing judge should be permitted to consider the subsequent events, including the assault of April 8 and the later telephone threats, in fashioning a proper sentence for the April 2 incident. We agree, but we hasten to point out that punishment for the separate conduct should be imposed in the case involving that conduct. Each incident may color the other, and additional knowledge of a defendant's propensities may affect the ultimate determination of what is a fair sentence for the case under consideration. Those considerations will never, however, justify the imposi-

tion of a sentence that is grossly disproportionate for the offense for which the defendant is being sentenced.

## C.

██ The sentence of 30 years imposed for the April 8 battery presents a more difficult problem. The defendant was acquitted of assault with intent to murder, a crime having a maximum penalty of 30 years, and thus the sentence imposed does not exceed the common law limitation imposed by *Simms.* The defendant argues that the trial judge made a finding that if death had occurred the defendant could not have been convicted of any crime more serious than manslaughter. Accordingly, he says, the trial judge must have found that the defendant did not have an intent to inflict serious bodily harm, for if he had possessed such an intent and death had resulted, he would have been guilty of second degree murder. *State v. Earp,* 319 Md. 156, 162, 571 A.2d 1227 (1990); *Ross v. State,* 308 Md. 337, 340, 519 A.2d 735 (1987). Thus, says the defendant, he could not have had the intent to maim, disfigure, or disable, and the level of seriousness of his offense should be measured by the 10– (now 15–) year limit applicable to an assault with that intent. The defendant's argument fails for several reasons. First, the trial judge's statement was not a required finding in the case, made after opportunity for argument and consideration of the relevant law; it was a casual statement made in the course of a sentencing. Second, looking to the facts of the assault in this case, it is perfectly apparent that the evidence would have supported a finding of murder in the second degree if the victim had died as a result of the April 8 assault.

The assault was serious. The defendant is 6′2″ tall and weighs 148 pounds. The victim was about 5′ tall, and weighed 102 pounds. The defendant was angry because he thought his wife had engaged in sexual relations with another man a few days earlier, but the victim denied that conduct, and she had not hit or threatened the defendant on this occasion. For no reason other than his ire, the defendant picked up a steam iron and struck his wife on the head with it, causing a 8 cm.

laceration down to bone, and causing severe bleeding. He then struck her twice more with the iron, in the upper portion of her back near the spine. The blows were of sufficient force to cause damage to the iron.

The victim lost consciousness briefly, and when the paramedic arrived he assessed the injury as sufficiently serious to require helicopter transportation. The victim was flown to the shock trauma unit at the University of Maryland Hospital in Baltimore, where her wounds were treated and she remained for two days. Thereafter, the victim was seen by her family doctor, and by a psychiatrist. She complained of post-traumatic headaches, backaches, crying spells, nervousness, depression, and of recurring nightmares. She informed the court that she had been unable to maintain the employment she had enjoyed at the time of the incident. The assault occurred in the presence of the victim's 12–year–old daughter. Following the offense, the defendant called the victim repeatedly, and according to her, threatened to take her life.

The defendant had previously been convicted of assault and battery and of being a rogue and vagabond in 1978, driving while intoxicated in 1984, driving while suspended or revoked in 1984 and 1985, and of assault and battery and disorderly conduct in 1986. At the time of the assault of April 8, the defendant was under order of court to stay away from the premises where the assault occurred.

Although we believe the 30–year sentence imposed for this battery was harsh and severe, we do not find under the circumstances that it was so grossly disproportionate to the offense that it must be set aside. Our threshold comparison of the sentence to the circumstances of the offense and the relevant particulars concerning the defendant does not suggest to us that the sentence is grossly disproportionate. In contrast to the sentence of 20 years for a slap of the victim, this sentence was imposed for an aggravated type of an assault. This is not, therefore, one of those "rare cases" of a cruel sentence that violates either the Eighth Amendment of

the United States Constitution or Article 25 of the Maryland Declaration of Rights.[5]

## IV.

After the defendant's arrest for assaulting his wife on April 8, he began making phone calls to her from jail, at first inquiring about her health and when she could come visit him. Later, the calls became more frequent and threatening in nature. Shirlene Thomas testified that the defendant made approximately 30 calls to her home during the last part of April, 1991. In some of these phone calls, but not all, the defendant threatened to kill Shirlene or her family. The calls ceased when Shirlene had a "block" put on her telephone.

Based on these phone calls, the defendant was convicted and sentenced to six months incarceration for unlawful use of a telephone.[6] He contests that conviction, though, arguing that

---

5. The defendant's argument that we should afford greater protection under Article 25 of the Maryland Declaration of Rights than is afforded by the Eighth Amendment to the United States Constitution, based upon the disjunctive phrasing "cruel or unusual" of the Maryland protection, is not without support. *See People v. Bullock*, 440 Mich. 15, 485 N.W.2d 866, 870–72 (1992) (phrasing of "cruel or unusual" in Michigan Constitution not accidental or inadvertent, and may constitute a compelling reason for broader interpretation of state constitution provision than that given Eighth Amendment clause). *See also Harmelin v. Michigan*, 501 U.S. at ——, 111 S.Ct. at 2687 (opinion of Scalia, J., and as to this part of the opinion joined by Rehnquist, C.J.) (contending that the conjunctive phrasing of the Eighth Amendment militates against the existence of a proportionality component as a part of that protection). Our cases interpreting Article 25 of the Maryland Declaration of Rights have generally used the terms "cruel and unusual" and "cruel or unusual" interchangeably. The Court of Special Appeals has suggested that "the adjective 'unusual' adds nothing of constitutional significance to the adjective 'cruel' which says it all, standing alone." *Walker, supra,* 53 Md.App. at 193 n. 9, 452 A.2d 1234. Because the prevailing view of the Supreme Court recognizes the existence of a proportionality component in the Eighth Amendment, we perceive no difference between the protection afforded by that amendment and by the 25th Article of our Declaration of Rights.

6. Maryland Code (1957, 1992 Repl.Vol.) Art. 27, § 555A states:

It is unlawful for any person to make use of telephone facilities or equipment (1) for an anonymous call or calls if in a manner reason-

the calls he made from the jail were collect calls which were accepted by his wife, thereby negating the unwanted nature of the calls required by the telephone misuse statute.

The telephone misuse statute has been interpreted to require: repeated phone calls; the defendant's specific intent to annoy, harass, embarrass, torment or abuse the person who received the calls; and the criminal agency of the defendant. *Caldwell v. State*, 26 Md.App. 94, 107, 337 A.2d 476 (1975); *see also von Lusch v. State*, 39 Md.App. 517, 525, 387 A.2d 306, *cert. denied*, 283 Md. 740 (1978) (statute is aimed at a pattern of repeated calls, rather than individual calls as distinct offenses).

The record in this case contains evidence sufficient to satisfy each of those requirements. It shows that in late April, Mrs. Thomas, after receiving advice from a local shelter about the defendant's attempts to contact her, filed charges against him for making harassing phone calls. According to Mrs. Thomas's statement, the defendant called her on April 24 and threatened to kill her and anyone in her house. This was apparently the third call of this nature. On April 27, the defendant called from the Denton jail and stated that he "was getting out on bail and that he was going to kill anyone in the house when he got out." He also stated that he knew how to get into her house any time he desired. There were five calls like this one.

We reject the defendant's contention that his wife's acceptance of his collect phone calls from jail contradicts some implied requirement in the statute that the phone calls be "unwanted." We refuse to infer from the language of the

---

ably to be expected to annoy, abuse, torment, harass, or embarrass one or more persons; (2) for repeated calls, if with intent to annoy, abuse, torment, harass, or embarrass one or more persons; or (3) for any comment, request, suggestion or proposal which is obscene, lewd, lascivious, filthy, or indecent. Any person violating any one of the provisions of this section is guilty of a misdemeanor, and upon conviction thereof, shall be subject to a fine of not more than $500.00 or to imprisonment for not more than three (3) years, or both, in the discretion of the court.

statute that the legislature intended to require a recipient to terminate a phone call at the point she identifies the caller as someone who *might* harass her. Although the harassment is undoubtedly unwanted, it is conceivable that the recipient might want to receive a phone call from the would be harasser.

This case provides an example of such a situation. Despite the abuse she suffered at his hands, it is possible that Mrs. Thomas needed, or wanted, to talk to her husband while he was incarcerated. She placed a certain amount of trust in him by accepting his phone calls. Unfortunately, he abused that trust by harassing her. He should not be able to escape the consequences of his criminal behavior by arguing that she consented to the harassment by accepting the calls. Mr. Thomas made many phone calls to his wife while he was in jail, and fortunately, not all of them were threatening. The law should not force her to assume that every phone call from her husband would be harassing.

The telephone misuse statute contains no express requirement that the recipient reject the calls, and no inference to that effect is warranted. Rather, the statute places the onus of the crime on the intent of the caller. *Caldwell, supra,* 26 Md.App. at 107–08, 337 A.2d 476. The trial court reasonably concluded that the defendant intended to harass his wife, and that conclusion will not be disturbed.

SENTENCE OF 20 YEARS FOR BATTERY OF APRIL 2 VACATED, AND CASE REMANDED FOR RESENTENCING ON THAT COUNT; REMAINDER OF JUDGMENT OF THE CIRCUIT COURT FOR CAROLINE COUNTY AFFIRMED; COSTS TO BE PAID BY CAROLINE COUNTY.

ELDRIDGE, J., concurring in part and dissenting in part.

CHASANOW, J., dissenting in part, in which RODOWSKY, J., joins.

ROBERT M. BELL, J., concurring and dissenting.

APPENDIX
MAXIMUM PENALTIES IN OTHER JURISDICTIONS
FOR SIMPLE ASSAULT AND BATTERY

| JURISDICTION | MAXIMUM PENALTY |
|---|---|
| Alabama | 1 year and/or $2,000, Ala.Code § 13A–5–7, 13A–5–12 and 13A–6–22 (1977, 1982 Repl. Vol.). |
| Alaska | 1 year and/or $5,000, Alaska Stat. §§ 11.41.-230 (1962, 1989 Repl.Vol., 1993 Cum.Supp.) and 12.55.135 (1990 Repl.Vol.). |
| Arizona | 6 months and/or $2,500, Ariz.Rev.Stat.Ann. §§ 13–707, 13–802 and 13–1203 (1956). |
| Arkansas | 1 year and/or $1,000, Ark.Code Ann. §§ 5–13–203, 5–4–401 and 5–4–201 (Michie 1987). |
| California | 6 months and/or $2,000, Cal.Penal Code §§ 240–243 (West 1987, 1993 Cum.Supp.). |
| Colorado | 2 years and/or $5,000, Colo.Rev.Stat. §§ 18–1–106 and 18–3–204 (1990). |
| Connecticut | 1 year and/or $1,000, Conn.Gen.Stat. §§ 53a–36, 53a–61 and 53a–42 (1958, 1989). |
| District of Columbia | 1 year and/or $500, D.C.Code Ann. §§ 22–504 and 22–507 (1981, 1989). |
| Florida | 1 year and/or $1,000, Fla.Stat.Ann. §§ 775.-082, 775.083, 784.011 and 784.03 (West 1992). |
| Georgia | 1 year and/or $1,000, Ga.Code Ann. §§ 16–5–20, 16–5–23 and 17–10–3 (1990, 1992, 1993 Cum.Supp.). |
| Hawaii | 1 year and/or $2,000, Haw.Rev.Stat. §§ 706–640(4), 706–663 and 707–712 (1968, 1985 Repl.Vol., 1992 Cum.Supp.). |
| Idaho | 6 months and/or $500, Idaho Code §§ 18–901 through 18–904 (1948, 1987). |
| Illinois | 1 year and/or $1,000, Ill.Rev.Stat. ch. 5, ¶ 12–1, 12–3, 5–8–3 and 5–9–1 (1993). |
| Indiana | 1 year and/or $5,000, Ind.Code Ann. §§ 35–42–2–1 and 35–50–3–3 (West 1985, 1993 Cum.Supp.). |
| Iowa | 1 year and/or $1,000, Iowa Code Ann. §§ 708.1, 708.2 and 903.1 (West 1979, 1993 Cum.Supp.). |
| Kansas | 6 months and/or $1,000, Kan.Crim.Code Ann. §§ 21–3408, 3412, 4502 and 4503 (Vernon 1988). |
| Kentucky | 1 year and/or $500, Ky.Rev.Stat. §§ 508.030, 532.090 and 534.040 (Michie/Bobbs–Merrill 1973, 1990, 1992 Cum.Supp.). |
| Louisiana | 6 months and/or $500, La.Rev.State.Ann. Title 14, §§ 33, 35 and 38 (West 1986). |

| JURISDICTION | MAXIMUM PENALTY |
|---|---|
| Maine | 1 year and/or $2,000, Me.Rev.Stat.Ann. tit. 17A, §§ 207, 1252 and 1301 (1964, 1983 Repl.Vol., 1992 Cum.Supp.). |
| Massachusetts | 2½ years and/or $500, Mass. Gen.L. ch. 265, § 13A (West 1992). |
| Michigan | 3 months and/or $100, Mich.Comp.Laws §§ 750.81 and 750.504 (1991). |
| Minnesota | 3 months and/or $700, Minn.Stat. §§ 609.03 and 609.224 (1987). |
| Mississippi | 6 months and/or $500, Miss.Code Ann. § 97–3–7 (1972, 1993 Cum.Supp.). |
| Missouri | 1 year and/or $1,000, Mo.Rev.Stat. §§ 558.-011, 560.016 and 565.070 (1979, 1993 Cum. Supp.). |
| Montana | 6 months and/or $500, Mont.Code Ann. § 45–5–201 (1979, 1993 Cum.Supp.). |
| Nebraska | 1 year and/or $1,000, Neb.Rev.Stat. §§ 28–106 and 28–310 (1977, 1989 Repl.Vol.). |
| Nevada | 6 months and/or $1,000, Nev.Rev.Stat. §§ 193.150, 200.471 and 200.481 (1967, 1992 Repl.Vol.). |
| New Hampshire | 1 year and/or $2,000, N.H.Rev.Stat.Ann. §§ 631:2–a, 631:4 and 651:2 (1955, 1986 Repl.Vol., 1992 Cum.Supp.). |
| New Jersey | 6 months and/or $500–$7,500, N.J.Stat.Ann. §§ 2C: 12–1, 2C: 43–3 and 2C: 43–8 (1982, 1993 Cum.Supp.). |
| New Mexico | 6 months and/or $500, N.M.Stat.Ann. §§ 30–3–1, 30–3–4 and 31–19–1(B) (Michie 1978, 1990 Repl. Pamphlet). |
| New York | 1 year and/or $1,000, N.Y.Penal Law §§ 70.-15, 80.05, 120.00 and 120.15 (Consol.1965, 1984 Repl.Vol., 1991 Cum.Supp.). |
| North Carolina | 1 month and/or $50, N.C.Gen.Stat. § 14–33 (1986). |
| North Dakota | 1 month and/or $500, N.D.Cent.Code §§ 12.1–17–01 and 12.1–32–01 (1975, 1985 Repl.Vol., 1993 Cum.Supp.). |
| Ohio | 6 months and/or $1,000, Ohio Rev.Code Ann. §§ 2903.13 and 2929.21 (1953, 1993 Repl. Vol.). |
| Oklahoma | 3 months and/or $500, Okla.Stat.Ann. tit. 21 §§ 641, 642 and 644 (West 1983, 1993 Cum. Supp.). |
| Oregon | 1 year and/or $2,500, Or.Rev.Stat. §§ 161.-615, 161.635, 163.160 and 163.190 (1991). |
| Pennsylvania | 2 years and/or $5,000, 18 Pa.Cons.Stat.Ann. §§ 1101, 1104 and 2701 (1983, 1993 Cum. Supp.). |

| JURISDICTION | MAXIMUM PENALTY |
|---|---|
| Rhode Island | 1 year and/or $500, R.I.Gen.Laws § 11–5–3 (1956, 1981 Repl.Vol., 1991 Cum.Supp.). |
| South Carolina | 1 year and/or $200, S.C.Code Ann. § 16–3–610 (Law. Co-op. 1976, 1985 Repl.Vol.). |
| South Dakota | 1 year and/or $1,000, S.D. Codified Laws Ann. §§ 22–6–2 and 22–18–1 (1967, 1988 Repl.Vol., 1993 Cum.Supp.). |
| Tennessee | 11 months and 29 days and/or $2,500, Tenn. Code Ann. §§ 39–13–101 and 40–35–111 (1990, 1993 Cum.Supp.). |
| Texas | 1 year and/or $3,000, Texas Penal Code Ann. §§ 12.21 and 22.01 (West 1974, 1993 Cum.Supp.). |
| Utah | 6 months and/or $1,000, Utah Code Ann. §§ 76–3–204, 76–3–301 and 76–5–102 (1953, 1990 Repl.Vol.). |
| Vermont | 1 year and/or $1,000, Vt.Stat.Ann. titl. 13, § 1023 (1958, 1974, 1993 Cum.Supp.). |
| Virginia | 1 year and/or $2,500, Va.Code Ann. §§ 18.2–11 and 18.2–57 (Michie 1956, 1988 Repl.Vol., 1993 Cum.Supp.). |
| Washington | 1 year and/or $5,000, Wash.Rev.Code §§ 9A.20.020 and 9A.36.041 (1992). |
| West Virginia | 1 year and/or $500, W.Va.Code § 61–2–9 (1966, 1992 Repl.Vol.). |
| Wisconsin | 9 months and/or $10,000, Wis.Stat.Ann. §§ 939.51 and 940.19 (West 1982). |
| Wyoming | 6 months and/or $750, Wyo.Stat. § 6–2–501 (1977, 1988 Cum.Supp.). |

ELDRIDGE, Judge, concurring in part and dissenting in part:

I concur in the Court's judgment except for that part affirming the sentence of 30 years imprisonment for the April 8, 1991, battery. Moreover, I join the Court's opinion except for Part III C. In my view, the principles set forth in Part III A of the Court's opinion, with which I fully agree, compel the conclusion that the 30–year sentence for the April 8th battery should also be vacated and the case remanded for resentencing on that count.

CHASANOW, Judge, dissenting in part.

The Court today reverses a sentence as cruel and unusual punishment, even though it holds that sentence is within the

permissible range of punishment for the crime charged. Had the Court reached the same result by simply extending the holding (albeit ignoring some of the *dicta*) in *Simms v. State,* 288 Md. 712, 421 A.2d 957 (1980) to uncharged greater offenses, I would join in the decision and the result. Instead, for the first time in its history, the Court reverses a sentence for being cruel and unusual punishment, and in doing so gives little guidance to trial judges.

### I.

In *Simms,* a defendant was acquitted of a statutory aggravated assault count and convicted of the common law assault count. He was sentenced to twelve years on the common law assault charge when the aggravated assault for which he was acquitted carried only ten years. This Court vacated the sentence, not because it was cruel and unusual, but because "[t]o uphold the twelve year sentence[ ] under these circumstances would be to sanction an extreme anomaly in the criminal law. It would permit a defendant to be punished more severely because of an acquittal on a charge. He would have fared better if he were less successful or had pled guilty to the greater charge...." 288 Md. at 723–24, 421 A.2d at 963. *Simms* was founded on Maryland common law and, apparently, principles of "fairness," rather than the constitutional prohibitions against cruel and unusual punishment. Where it is clear that a common law assault is a lesser included offense of a greater aggravated assault and there are no other aggravating factors, the *Simms* rationale ought to be applicable and the punishment for the common law assault should be limited by the punishment for the greater statutory offense whether the defendant is acquitted of the greater offense or never charged with it.

In *Johnson v. State,* 310 Md. 681, 531 A.2d 675 (1987), this Court reiterated that, where a statutory aggravated assault count is nol prossed during trial, the nol prossed count "places a cap upon the possible maximum sentence on the lesser included simple assault charge...." 310 Md. at 692, 531 A.2d

at 680. The justification for this holding was that "[t]he anomaly pointed to in the *Simms* opinion . . . may arise when the greater charge is nol prossed." 310 Md. at 694, 531 A.2d at 681. The *Johnson* rationale should be extended to cover uncharged aggravated assaults as well as nol prossed aggravated assaults. The same "fairness" that led to the limitation on punishment of common law assaults, which are clearly lesser included offenses of nol prossed aggravated assaults, is equally applicable to common law assaults which are clearly lesser included offenses of uncharged aggravated assaults. It would seem that the anomaly that is present when the State elects to nol pros what is clearly a greater aggravated assault is also present when the State elects not to charge the greater aggravated assault.

If an assault clearly was a lesser included offense and, at most, involved an intent to maim, then the sentence should reasonably be limited to the maximum for assault with intent to maim. The same holds true for an assault and battery where the intent was, at most, an intent to murder; the punishment should be limited by the maximum for assault with intent to murder. If, however, there were conceivably two or more intents, *e.g.,* clubbing a woman with the intent to disable and then rape her, then the punishment for the assault would only be limited to the maximum for an assault with intent to rape and an assault with intent to disable *consecutively.* Also, if the assault and battery were committed on a victim of a class deserving special protection, that should aggravate the offense, and the assault and battery might not be simply a lesser included offense. For assaults on people deserving special protection, the punishment might permissibly exceed the maximum for assault with intent to disable or murder. For example, assaults on infants, the handicapped, the aged, police officers, prison guards, etc., have aggravating elements and might not be simply a lesser included offense of assault with intent to disable or assault with intent to murder. Had the majority based its holding on an extension of *Simms* and *Johnson,* I would be in full agreement. The Court,

however, rejects this common law limitation and concludes that "*Simms* has direct application only when a greater offense has been charged and jeopardy has attached with respect to that greater offense." 333 Md. at 91, 634 A.2d at 4.

## II.

The majority opinion reaffirms the line of cases holding that a twenty-year sentence for the common law crime of assault and battery is permissible. It then goes on to do something that this Court has never done before; it reverses, as cruel and unusual punishment, a sentence within the permissible range of punishment for the crime.

Neither sentence imposed for Mr. Thomas's course of vicious, escalating spousal abuse should result in this Court's first reversal of a sentence as cruel and unusual punishment. There were good reasons why the trial judge intended to impose the maximum permissible sentences permitted by law for the April 2nd assault and battery as well as for the April 8th assault and battery. Contained in the court file is a letter, from the manager of the family violence shelter who was assisting Ms. Thomas, which states that "[Mr. Thomas] has demonstrated his contempt for the law and we feel he is capable and serious of carrying out his threat to kill Ms. Thomas." The twenty-year sentence for the April 2nd offense was harsh, but it was unquestionably within the range of punishment permitted for the crime of assault and battery by a substantial number of prior cases. The sentence was justified by Mr. Thomas's record of assaults and his intent, as evidenced by his threats and his actions, to kill Ms. Thomas whenever he is released from prison.

The majority acknowledges that this Court and the Court of Special Appeals "have sustained 20–year sentences for common law assault against both constitutional and legal attacks...." 333 Md. at 98, 634 A.2d at 8. A case on point is *Roberts v. Warden,* 242 Md. 459, 219 A.2d 254, *cert. denied,* 385 U.S. 876, 87 S.Ct. 156, 17 L.Ed.2d 104 (1966), where the

defendant pled guilty to two counts of common law assault on two police officers. The nature and severity of the assaults in *Roberts* were apparently not considered relevant by this Court because they were not even discussed. The only way one can piece together the facts surrounding the assaults is through prior case history,[1] which indicates that Roberts claimed he pled guilty to two technical common law assaults on police officers. He attempted to explain the assaults he pled guilty to by claiming he accidently shot one of the officers and then struck the other officer with the butt of the gun in self defense to keep from being shot himself. This Court held that the two, twenty-year consecutive sentences for the two counts of simple assault did not constitute cruel and unusual punishment without even reviewing the facts surrounding the assault. *Roberts v. Warden*, 242 Md. at 461, 219 A.2d at 255.

This Court also addressed whether a sentence for assault constituted cruel and unusual punishment in *Adair v. State*, 231 Md. 255, 189 A.2d 618 (1963). In *Adair*, the defendant was convicted of assault with intent to rape one victim and sentenced to life imprisonment. He was convicted of common law assault on a second victim and sentenced to a twenty-year consecutive sentence for the assault. Again without any discussion of the nature and severity of the assault, this Court stated simply: "The sentence of twenty years' confinement for assault did not constitute 'cruel and unusual punishment' contrary to Articles 16 and 25 of the Maryland Declaration of Rights." 231 Md. at 256, 189 A.2d at 619. The majority apparently went back to the thirty-year-old briefs to ascertain the nature of the assault even though, when the *Adair* Court

---

1. *See* opinion by Judge Chesnut in *Roberts v. Peppersack*, 190 F.Supp. 578, 579–80 (D.Md.) (providing a synopsis of Robert's attempts to obtain relief), *appeal dismissed*, 286 F.2d 635 (4th Cir.1960). *Roberts v. Peppersack* was the last in a series of cases involving the same defendant. *See Roberts v. Warden*, 206 Md. 246, 111 A.2d 597 (1955); *Roberts v. Warden*, 214 Md. 611, 135 A.2d 446 (1957), *cert. denied*, 355 U.S. 966, 78 S.Ct. 556, 2 L.Ed.2d 540 (1958); and *Roberts v. Warden*, 221 Md. 576, 155 A.2d 891 (1959), *cert. denied*, 362 U.S. 953, 80 S.Ct. 866, 4 L.Ed.2d 871 (1960).

held that the twenty-year sentence for assault did not consti-
tute cruel and unusual punishment, the facts were not deemed
sufficiently relevant to be discussed by this Court.

In the instant case, the April 2nd assault, giving the judge
the benefit of the doubt and taking the testimony in the light
most favorable to the State, was a serious instance of spousal
abuse. Shirleen Thomas testified that on April 2nd, the police
were called to her home and warned her husband against
future assaults. In Shirleen Thomas's testimony on the wit-
ness stand, she maintained that the description of the incident
included in the application for statement of charges was
correct. She confirmed that "[Mr. Thomas] got real angry
because the police was called. He cussing and destroyed
some of the items in the apartment. Then he went in the
kitchen to get a knife, which he pulled on me. Then he took
his hand and struck on the right side of the face...." At the
conclusion of the State's case, in denying a motion for judg-
ment of acquittal, the trial judge stated that "[Mr. Thomas]
did cause injury to her face which may or may not have been a
scar and may or may not have been a permanent or temporary
scar...." It is reasonable to assume the trial judge felt the
twenty-year sentence was justified because 1) Mr. Thomas had
two prior convictions for assault, one sentence was suspended
and he served a jail sentence for his other previous assault; 2)
the April 2nd assault was committed immediately after Mr.
Thomas was warned by the police; 3) Mr. Thomas subse-
quently committed another much more violent assault on Ms.
Thomas in spite of a protective order; and 4) even after being
incarcerated for those offenses, he repeatedly threatened to
kill Ms. Thomas. The judge believed these threats would be
carried out if Mr. Thomas was ever released.

The legislature has set up a procedure for review of criminal
sentences by a panel of three or more trial judges under
Maryland Code (1957, 1992 Repl.Vol.), Article 27, §§ 645JA
through 645JG. Thomas sought a review of his sentences and
after a hearing a panel of three circuit court judges unani-
mously decided both assault sentences should remain un-

changed. That decision by three experienced trial judges provides some indication that the twenty-year sentence is not unreasonable and should not be considered cruel and unusual punishment.

What are the factors that, according to the majority, make this twenty-year sentence for assault and battery cruel and unusual punishment when previously every other twenty-year sentence for assault and battery was not. We are not given much guidance. We are given only a factual analysis where the majority seems to have made its own findings of fact instead of taking the testimony and reasonable inferences in the light most favorable to the trial judge's decision. For example, the majority states that "the battery in this case did not result in any lasting physical injury, and cannot be considered legally 'serious.'" 333 Md. at 98, 634 A.2d at 7. This seems to create a brand new category of "not legally serious" common law assaults. This assault was "legally serious." Thomas outweighs his wife by approximately 40 pounds and is over a foot taller than she. The judge could reasonably have assumed that the "slap" was to punish Ms. Thomas for calling the police and was committed with all the force Thomas could muster. The majority opinion goes on to state, "[t]he sentence is not the result of a recidivist history." 333 Md. at 98, 634 A.2d at 7. This ignores Thomas's two prior convictions, one with a jail sentence imposed for assault and battery. It also ignores the very serious subsequent assault he committed on his wife. In addition, the majority states that "[t]he sentence was not based on any . . . judicial decision to impose severe penalties to deter domestic violence because of its societal impact." 333 Md. at 98, 634 A.2d at 7. To the contrary, the judge specifically stated, "I don't have one particular offense here. I've got a continuation of offenses and they're called spouse abuse. In this case, wife abuse. Very seldom is it one particular act and very seldom does it represent a passing motivation." The judge further stated, "everything that has been tried has not changed his behavior—has not deterred his obsessiveness with doing physical

harm to her, even including incarceration." [2] This sentence was deemed necessary in order to deter spousal abuse and to prevent severe future harm to this victim.

When is a sentence for assault and battery cruel and unusual punishment? The majority provides us with little or no guidance—we can assume that, if on resentencing the judge gives Thomas nineteen years, the sentence would probably be reversed, but what about a fifteen-year sentence or a ten-year sentence. Judges need to know, and are entitled to know, what the maximum permissible punishment is for any crime. Some people, and Mr. Thomas is one, deserve the maximum permissible punishment for their crime. The Court reiterates that twenty years imprisonment is still a permissible punishment for the common law crime of assault and battery, but it leaves several questions unanswered. Are there "legally serious" and "not legally serious" degrees of common law assault carrying different maximum penalties? What is the maximum, constitutionally permissible sentence for the assault and battery in the instant case? The trial judge obviously intended to give Thomas the maximum sentence—the Court should give the judge some guidance for resentencing.

The majority quotes with approval Justice Kennedy's concurring opinion in *Harmelin v. Michigan*,[3] 501 U.S. ——, 111

---

**2.** The trial judge also noted:
"The thing that strikes one about this particular series of events in cases is the persistence in aggressiveness of the incidents. Starting with the usual call to the police. They leave and he whips up on her. She gets an Ex Parte Order. It's signed. He doesn't abide by it. And finally it leads to her being in Shock Trauma because of an iron placed to her temple or that area. That is not something to be winked at and one only has to question why wasn't there a homicide resulting. It's miraculous that there wasn't."

**3.** In *Harmelin v. Michigan*, 501 U.S. 957, 111 S.Ct. 2680, 115 L.Ed.2d 836 (1991), the defendant was sentenced to life imprisonment without parole for simple possession of 672 grams of cocaine under a statute requiring a mandatory life sentence without parole for possessing a mixture containing narcotics that weighs at least 650 grams. The statute did not contain any *mens rea* requirement of intent to distribute. 501 U.S. at ——, 111 S.Ct. at 2684 n. 1, 115 L.Ed.2d at 843 n. 1. A

S.Ct. 2680, 115 L.Ed.2d 836 (1991). In that same opinion Justice Kennedy also stated:

> "[T]he objective line between capital punishment and imprisonment for a term of years finds frequent mention in our Eighth Amendment jurisprudence. By contrast, our decisions recognize that we lack clear objective standards to distinguish between sentences for different terms of years. 'It is clear that a 25–year sentence generally is more severe than a 15–year sentence, but in most cases it would be difficult to decide that the former violates the Eighth Amendment while the latter does not[.]' Although 'no penalty is *per se* constitutional,' the relative lack of objective standards concerning terms of imprisonment has meant that ' "[o]utside the context of capital punishment, *successful* challenges to the proportionality of particular sentences [are] exceedingly rare." ' " (Emphasis in original) (citations omitted).

*Harmelin,* 501 U.S. at ——, 111 S.Ct. at 2705, 115 L.Ed.2d at 868–69 (quoting *Solem v. Helm,* 463 U.S. 277, 289–90, 294, 103 S.Ct. 3001, 3009–10, 3012, 77 L.Ed.2d 637, 649, 652 (1983) (footnote omitted), in turn quoting *Rummel v. Estelle,* 445 U.S. 263, 272, 100 S.Ct. 1133, 1138, 63 L.Ed.2d 382, 390 (1980)).[4] Longer sentences than those imposed in the instant

---

majority of the Supreme Court held the sentence was not cruel or unusual punishment.

4. Articles 16 and 25 of the Maryland Declaration of Rights afford no different or greater rights than the Eighth Amendment. In *Minor v. State,* 313 Md. 573, 589 n. 4, 546 A.2d 1028, 1035 n. 4 (1988), Judge Eldridge stated in his concurring opinion:

> "The majority opinion does not separately discuss the defendant's reliance upon Articles 16 and 25 of the Maryland Declaration of Rights. Thus, the majority apparently views the Maryland constitutional provisions as being *in pari materia* with the Eighth Amendment. This approach, with which I agree, seems to be reflected in many of our prior cases. *See, e.g., Tichnell v. State,* 287 Md. 695, 720–729, 415 A.2d 830 (1980); *Delnegro v. State,* 198 Md. 80, 88–89, 81 A.2d 241 (1951); *Lanasa v. State,* 109 Md. 602, 611–12, 71 A. 1058 (1909); *Foote v. State,* 59 Md. 264, 268 (1883). *See also Mitchell v. State,* 82 Md. 527, 532–534, 34 A. 246 (1896) [ (Article 25 derived

case have been upheld for conduct which some may consider less reprehensible than Mr. Thomas's violent attacks on his spouse. *See Hutto v. Davis,* 454 U.S. 370, 102 S.Ct. 703, 70 L.Ed.2d 556 (1982) (holding a sentence of twenty years for possession with intent to distribute nine ounces of marijuana was not cruel and unusual punishment and that an extensive proportionality review was unnecessary); *Rummel,* 445 U.S. at 285, 100 S.Ct. at 1145, 63 L.Ed.2d at 397–98 (holding mandatory life sentence pursuant to Texas recidivist statute for obtaining $120.75 by false pretenses did not constitute cruel and unusual punishment where defendant was previously convicted of two other nonviolent crimes—fraudulent use of a credit card for $80.00 worth of goods and passing a forged check in the amount of $28.36). It is noteworthy that the majority does not analogize to, rely on, or even cite any case from any jurisdiction which reverses any sentence as being cruel and unusual punishment.[5]

There is no question that the twenty-year sentence in the instant case was harsh. But even if the sentence was harsh and even if the three-judge panel that reviewed the sentence should have reduced it, that does not make the sentence cruel and unusual punishment. No prior twenty-year sentence for the crime of assault and battery has ever been held to be cruel and unusual punishment, and there are at least six reported appellate decisions sustaining twenty-year sentences for assault and battery against such constitutional attacks.[6] When

---

from English Bill of Rights, which was also source of Eighth Amendment) ]."

5. I question the relevancy of the Court's appendix containing the penalties which 49 jurisdictions have provided for the most minor form of assault and battery. Those penalties range from 30 days to 2½ years with the vast majority of the statutes providing for penalties of one year or less. I assume the Court is neither hinting that under its proportionality review there should be a 2½ year maximum penalty in Maryland for the common law crime of assault and battery nor *sub silentio* reversing the half dozen or so reported decisions sustaining twenty-year sentences for the common law crime of assault and battery.

6. *See, e.g., Roberts v. Warden,* 242 Md. 459, 460–61, 219 A.2d 254, 255, *cert. denied,* 385 U.S. 876, 87 S.Ct. 156, 17 L.Ed.2d 104 (1966); *Adair*

we consider the totality of circumstances including that the assault and battery was committed by a man with two prior convictions for the same crime, who continued with escalating ferocity to assault his wife and who we may assume, if released, would carry out his threats to kill his wife, *this* sentence does not warrant being the first sentence ever reversed by this Court as cruel and unusual punishment.

I respectfully dissent from Part II, III, A and B of the Court's opinion.

Judge RODOWSKY has authorized me to state that he joins in the views expressed in Part II in this dissenting opinion.

ROBERT M. BELL, Judge, concurring and dissenting.

I am in complete agreement with the analysis employed, and the decision reached, by the majority with respect to the April 2nd battery. I, therefore, join the majority opinion in that regard. Although I agree with much of the analysis, I am unable to agree with the result reached by the majority with respect to the April 8th battery. As to that, then, I dissent.

The petitioner received a thirty year sentence for a battery which was a lesser included offense of assault with intent to murder, with which he was also charged and of which he was acquitted. In upholding that sentence, the majority relies on the principles we enunciated in *Simms v. State*, 288 Md. 712, 421 A.2d 957 (1980). Recognizing that, under *Simms*,

> when a defendant is charged with a greater offense and a lesser included offense based on the same conduct, with jeopardy attaching to both charges at trial, and when the defendant is convicted only of the lesser included charge, he

*v. State*, 231 Md. 255, 256, 189 A.2d 618, 619 (1963); *Walker v. State*, 53 Md.App. 171, 195, 452 A.2d 1234, 1246–47 (1982), *cert. denied*, 296 Md. 63 (1983); *Brown v. State*, 38 Md.App. 192, 195–96, 379 A.2d 1231, 1233–34 (1977), *cert. denied*, 282 Md. 730 (1978); *Raley v. State*, 32 Md.App. 515, 526–28, 363 A.2d 261, 268–70 (1976), *cert. denied*, 278 Md. 731 (1976), *cert. denied*, 431 U.S. 965, 97 S.Ct. 2921, 53 L.Ed.2d 1060 (1977); *Wilkins v. State*, 5 Md.App. 8, 22, 245 A.2d 80, 88 (1968).

may not receive a sentence for that conviction which exceeds the maximum sentence which could have been imposed had he been convicted of the greater charge,

*id.* at 724, 421 A.2d at 964, it holds that *Simms* does not operate to bar the sentence of thirty years. In its view, it simply is a cap; thus, as such, it only prevents a sentence exceeding, not one that equals, the maximum sentence permitted by the greater offense.

To be sure, *Simms* is susceptible to being interpreted as establishing a cap on the sentence that may be imposed for a lesser included offense when the greater offense has been charged. *See Johnson v. State*, 283 Md. 196, 388 A.2d 926 (1978), upon which *Simms* relied. The facts of that case and the Court's rationale, however, are revealing. Having been acquitted of assault with intent to rob, which carried a maximum sentence of ten years, Simms and Thomas were sentenced to twelve years imprisonment. This Court was concerned that "it is only because each defendant was acquitted on the assault with intent to rob charge that the longer twelve year sentences arguably became legally permissible. But for the acquittals, each defendant would of necessity have received *lighter sentences.*" *Simms*, 288 Md. at 723, 421 A.2d at 963 (emphasis added). The Court explained:

> To uphold the twelve year sentences under these circumstances would be to sanction an extreme anomaly in the criminal law. It would permit a defendant to be punished more severely because of an acquittal on a charge. He would have fared better if he were less successful or had pled guilty to the greater charge of assault with intent to rob. *Cf. Johnson v. State*, 274 Md. 536, 543, 336 A.2d 113[, 117] (1975), holding that "a price may not be exacted nor a penalty imposed for" pleading not guilty.

*Id.* at 723–724, 421 A.2d at 963.

In this case, as in *Simms*, the petitioner was acquitted of the greater offense, only in this case, the greater offense carried a maximum penalty more severe than the lesser

included one.[1] Although certainly not the same, I see an anomaly in this situation, the converse to that identified in *Simms*. The benefit of obtaining an acquittal of the greater offense is that imposition of its maximum sentence of thirty years is avoided. If the same sentence may be imposed notwithstanding that he has successfully defended that charge—the petitioner is nevertheless sentenced to thirty years *albeit* on the basis of the "lesser included" offense,[2] the petitioner is denied that benefit. While not as reprehensible as punishing the defendant more severely, allowing the imposition of the same sentence, despite the acquittal for the greater offense, does not take account of, or give effect, to that acquittal. The anomaly presented by that case is that the

---

1. Because there is no prescribed maximum penalty for common law assault, as our cases make clear, it may be argued that whenever common law offenses are involved, the *Simms* and *Johnson* situation will always apply, *i.e.*, because the maximum sentence for the lesser included offense is determined only by whether it is cruel and unusual, it potentially could involve a sentence more severe than the greater offense. That is not an appropriate analysis, however. In the history of this State, the most severe sentence this Court has upheld for common law assault, even extremely serious common law assaults, *see* majority opinion 333 Md. at 98 n. 3, 634 A.2d at 8 has been twenty years. In my opinion, therefore, twenty years is the maximum sentence that may be imposed for common law assault of the aggravated nature of the April 8th battery. Thus, where the offense is assault with intent to murder, the potential sentence for assault is the less severe sentence. Accordingly, the *Simms* and *Johnson* rationale does not apply; it not only is unnecessary, but it is improper to use the sentence for the acquitted crime to cap the sentence for assault.

2. To be sure, it is possible for a lesser included offense to prescribe a more severe penalty than the greater offense, as *Simms v. State,* 288 Md. 712, 421 A.2d 957 (1980) and *Johnson v. State,* 283 Md. 196, 388 A.2d 926 (1978) make clear. In that situation, it is not anomalous that, when there has been an acquittal on the greater offense, the maximum sentence for the greater offense is the cap on the sentence for the lesser one. The benefit of having been found not guilty of the greater offense would be that it limited the defendant's exposure for the lesser offense. On the other hand, when the greater offense carries the more severe penalty, there is absolutely no benefit derived from the acquittal of that offense if an appropriate sentence for the lesser offense is exactly the same as that prescribed by the greater offense.

petitioner may be punished as severely as for the most reprehensible conduct, even though the conduct for which he was convicted has been determined not to have been so blameworthy.

I would hold that the petitioner could have received no more than twenty years for the April 8th battery.