791 A.2d 143

STATE of Maryland,

v.

Charles Benjamin STEWART.

No. 63, Sept. Term, 2001.

Court of Appeals of Maryland.

Feb. 13, 2002.

Rachel Marblestone Kamins, Asst. Atty. Gen. (J. Joseph Curran, Jr., Atty. Gen. of Maryland, on brief), Baltimore, for appellant/cross-appellee.

Peter F. Rose, Asst. Public Defender (Stephen E. Harris, Public Defender, on brief), Baltimore, for appellee/cross-appellant.

Argued before BELL, C.J., and ELDRIDGE, RAKER, WILNER, CATHELL, HARRELL and BATTAGLIA, JJ.

RAKER, Judge.

The Circuit Court for Calvert County held that twenty-five years imprisonment without the possibility of parole, the mandatory sentence under Maryland Code (1970, 1996 Repl. Vol., 2001 Supp.) Article 27, § 286(d)[1] was cruel and unusual as applied to Charles B. Stewart. The court sentenced Stewart to ten years without parole. The State of Maryland appeals. In a cross-appeal, Stewart argues that, according to the rule announced in *Apprendi v. New Jersey,* 530 U.S. 466, 120 S.Ct. 2348, 147 L.Ed.2d 435 (2000), the trial judge erred in denying him a jury trial on the issue of sentencing. We shall hold that the trial court erred in failing to impose the mandatory sentence and that *Apprendi* is inapplicable.

I.

Charles B. Stewart, appellee, was indicted by the Grand Jury for Calvert County for possession and distribution of crack cocaine. After Stewart was convicted by a jury, the State argued that Stewart should be sentenced as a subsequent offender under Article 27, § 286(d), which provides as follows:

"(1) A person who is convicted under subsection (b)(1) or subsection (b)(2) of this section ... shall be sentenced to imprisonment for the term allowed by law, but, in any event, not less than 25 years if the person previously: (i) Has served at least 1 term of confinement of at least 180 days in a correctional institution as a result of a conviction of a previous violation of this section or § 286A of this article; and (ii) Has been convicted twice, where the convictions do not arise from a single incident...."

*Id.*

The trial court found that the State proved beyond a reasonable doubt the predicate facts necessary to support the mandatory sentence under § 286(d). The court also found

---

1. Unless otherwise indicated, all subsequent statutory references herein shall be to Maryland Code (1970, 1996 Repl.Vol., 2001 Supp.) Article 27, § 286(d).

that the conviction in this case was Stewart's third conviction for distribution of a controlled dangerous substance or possession with intent to distribute, and that Stewart served a term of confinement over 180 days following one of his prior convictions. In fact, the court observed that he had served three-and-a-half years in prison. The court stated:

"Therefore, having found that the State—the notice was done properly, the convictions were authenticated properly beyond a reasonable doubt, the Court is satisfied beyond a reasonable doubt that you served more than one hundred and eighty days after one of the two previous convictions. The Court is satisfied that the State has met their burden. And that their request to seek mandatory sentencing of twenty-five years without parole has been met."

Before the trial court imposed the sentence set out in § 286(d), defense counsel argued that the mandatory sentence was unconstitutional as applied to Stewart because "[t]here is nothing in this case to aggravate the nature of the distribution, no large quantity was involved. There was no violence, no weapons, none of that stuff, no large amounts of cash. It simply involves the distribution of one hundred and fifty dollars worth of cocaine." Defense counsel concluded that the sentence of twenty-five years without parole was grossly disproportionate to appellee's crime and thus "cruel and unusual." The State countered that the trial court lacked discretion to impose any sentence below the mandatory minimum sentence of twenty-five years without parole.

The trial court agreed with defense counsel. The court stated:

"I find ... that [defense counsel's] argument of cruel and unusual, and I'm sure he is shocked and astounded to hear me say it, that the argument of cruel and unusual punishment in this case based on these facts that I listened to as the Judge in your trial, and having been a prosecutor before and having been a Judge now for almost six years, and I hope a sense of fairness as to what is appropriate in cases, find that his argument, and it is a constitutional one, in this case I find that the statutory legislative scheme in your

case, Mr. Stewart, and not in all others, but in your case under these facts, I find that the legislative scheme of requiring me to give you a twenty-five years sentence without parole would under these facts represent cruel and unusual punishment."

The State noted a timely appeal to the Court of Special Appeals, pursuant to Maryland Code (1957, 1998 Repl.Vol., 2001 Supp.) § 12–302(c)(2) of the Courts and Judicial Proceedings Article.[2] We granted certiorari on our own motion prior to consideration by that court. *State v. Stewart*, 365 Md. 266, 778 A.2d 382 (2001).

## II.

Appellee argues that the trial court correctly found that under the facts of this case, the sentence mandated by § 286(d) was cruel and unusual punishment. More specifically, he claims that the mandatory sentence is unconstitutionally disproportionate to his crime. Appellee relies on the Eighth Amendment to the United States Constitution,[3] Article 25 of the Maryland Declaration of Rights,[4] and Article 16 of the Maryland Declaration of Rights.[5]

The State argues that this Court has held that whenever the statutory requirements are met and notice given, a trial court

---

2. Maryland Code (1957, 1998 Repl.Vol., 2001 Supp.) § 12–302(c)(2) of the Courts and Judicial Proceedings Article provides as follows:

   "The State may appeal from a final judgment if the State alleges that the trial judge failed to impose the sentence specifically mandated by the Code."

3. The Eighth Amendment to the United States Constitution provides as follows:

   "Excessive bail shall not be required, nor excessive fines imposed, nor cruel and unusual punishment inflicted."

4. Article 25 of the Maryland Declaration of Rights provides as follows:

   "That excessive bail ought not to be required, nor excessive fines imposed, nor cruel or unusual punishment inflicted, by the Courts of Law."

5. Article 16 of the Maryland Declaration of Rights provides as follows:

must impose the sentence prescribed in the mandatory sentencing statute. Thus, the State concludes that the trial court erred in declining to sentence appellee to the mandatory sentence under § 286(d): twenty-five years without parole. We agree with the State.

### III.

The Eighth Amendment to the United States Constitution provides that "[e]xcessive bail shall not be required, nor excessive fines imposed, nor cruel and unusual punishment inflicted." [6] Similarly, Article 25 of the Maryland Declaration of Rights provides "[t]hat excessive bail ought not to be required, nor excessive fines imposed, nor cruel or unusual punishment inflicted, by the Courts of Law." Finally, Article 16 of the Maryland Declaration of Rights provides "[t]hat sanguinary Laws ought to be avoided as far as is consistent with the safety of the State; and no Law to inflict cruel and unusual pains and penalties ought to be made in any case, or at any time, hereafter."

The Eighth Amendment encompasses a narrow proportionality principle prohibiting "grossly disproportionate" sentences. *Harmelin v. Michigan,* 501 U.S. 957, 997, 111 S.Ct. 2680, 2702, 115 L.Ed.2d 836 (1991) (Kennedy, J., concurring). In *Solem v. Helm,* 463 U.S. 277, 103 S.Ct. 3001, 77 L.Ed.2d 637 (1983), the Supreme Court held a sentence of life imprisonment without the possibility of parole for a seven-time non-violent felony recidivist unconstitutionally disproportionate. In so finding, the Court emphasized that successful challenges to the proportionality of a particular sentence are exceedingly rare. *Id.* at 289–90, 103 S.Ct. at 3009, 77 L.Ed.2d

---

"That sanguinary Laws ought to be avoided as far as is consistent with the safety of the State; and no Law to inflict cruel and unusual pains and penalties ought to be made in any case, or at any time, hereafter."

**6.** The Eighth Amendment applies to the States by virtue of the Fourteenth Amendment. *See Harmelin v. Michigan,* 501 U.S. 957, 962, 111 S.Ct. 2680, 2684, 115 L.Ed.2d 836 (1991).

637. The Court stated that appellate courts' proportionality review should be guided by objective criteria, including: "(i) the gravity of the offense and the harshness of the penalty; (ii) the sentences imposed on other criminals in the same jurisdiction; and (iii) the sentences imposed for commission of the same crime in other jurisdictions." *Id.* at 292, 103 S.Ct. at 3011, 77 L.Ed.2d 637.

In *Harmelin v. Michigan,* the Supreme Court revisited its decision in *Solem.* Justice Kennedy, concurring in the judgment, and writing for himself and three other justices, clarified that "the Eighth Amendment does not require strict proportionality between crime and sentence. Rather it forbids only extreme sentences that are 'grossly disproportionate' to the crime." *Harmelin,* 501 U.S. at 1001, 111 S.Ct. at 2705, 115 L.Ed.2d 836 (Kennedy, J., concurring) (quoting Solem v. Helm, 463 U.S. at 288, 103 S.Ct. at 3008, 77 L.Ed.2d 637).[7] Therefore, a detailed proportionality review based on the criteria set out in *Solem* is "appropriate only in the rare case in which a threshold comparison of the crime committed and the sentence imposed leads to an inference of gross disproportionality." *Harmelin,* 501 U.S. at 1005, 111 S.Ct. at 2707, 115 L.Ed.2d 836 (Kennedy, J., concurring).[8]

This Court. has found Justice Kennedy's approach to be consistent with our holdings in *State v. Davis,* 310 Md. 611,

---

**7.** Many courts regard Justice Kennedy's test as "the rule of *Harmelin* " because it is the position taken by those justices of the Supreme Court who concurred in the judgment on the narrowest ground. *See Andrade v. Attorney General,* 270 F.3d 743, 754 (2001) (quoting United States v. Bland, 961 F.2d 123, 128–29 (9th Cir.1992)).

**8.** In considering how courts should approach proportionality challenges, Justice Kennedy identified "some common principles that give content to the uses and limits of proportionality review." *Harmelin v. Michigan,* 501 U.S. 957, 988, 111 S.Ct. 2680, 2703, 115 L.Ed.2d 836 (1991) (Kennedy, J., concurring). The United States Court of Appeals for the Ninth Circuit summarized these principles as follows:

(1) courts should accord substantial deference to legislative determinations of appropriate punishments; (2) the Eighth Amendment does not require that legislatures adopt any particular penological theory, a point implicit in the *Solem* Court's conclusion that legislatures are entitled to substantial deference; (3) divergences in theories of sen-

530 A.2d 1223 (1987), and *Minor v. State*, 313 Md. 573, 546
A.2d 1028 (1988). *See State v. Bolden*, 356 Md. 160, 166, 737
A.2d 1086, 1089 (1999); *Thomas v. State*, 333 Md. 84, 94, 634
A.2d 1, 6 (1993). In *Thomas*, we harmonized our conclusions
concerning the breadth and depth of Eighth Amendment
proportionality review with Justice Kennedy's concurrence in
*Harmelin*. Judge McAuliffe, speaking for the court, stated:

> "In considering a proportionality challenge, a reviewing
> court must first determine whether the sentence appears to
> be grossly disproportionate. In so doing, the court should
> look to the seriousness of the conduct involved, the serious-
> ness of any relevant past conduct as in the recidivist cases,
> any articulated purpose supporting the sentence, and the
> importance of deferring to the legislature and to the sen-
> tencing court."

*Thomas*, 333 Md. at 95, 634 A.2d at 6. We emphasized that
"challenges based on proportionality will be seriously enter-
tained only where the punishment is truly egregious." *Id.* at
97, 634 A.2d at 7. We concluded as follows:

> "If these considerations do not lead to a suggestion of gross
> disproportionality, the review is at an end. If the sentence
> does appear to be grossly disproportionate, the court should
> engage in a more detailed *Solem*-type analysis.... In order
> to be unconstitutional, a punishment must be more than
> very harsh; it must be *grossly* disproportionate. This
> standard will not be easily met."

*Id.* at 95–96, 634 A.2d at 6.[9] Finally, we noted that the
sentencing judge is "virtually always better informed of the

---

tencing and the length of prison terms are inevitable in our federalist
system; (4) proportionality reviews should be informed by objective
factors; and (5) the Eighth Amendment does not require strict
proportionality between crime and sentence but rather, it forbids only
extreme sentences that are grossly disproportionate to the crime."
*Andrade v. Attorney General*, 270 F.3d 743, 757 (9th Cir.2001) (citations
and internal quotation marks omitted).

**9.** In *Thomas*, we cautioned that if a reviewing court engages in an in-
depth proportionality review, *Solem* does not limit the relevant factors a

particular circumstances." *Id.* at 97, 634 A.2d at 7. The trial judge has the unique ability to find the facts and to evaluate the individuals before the court.

## IV.

Turning to the case before us, and applying the principles set out by the Supreme Court and the test laid out in *Thomas,* we conclude that the punishment of twenty-five years imprisonment without parole is not unconstitutionally disproportionate to the crime committed by appellee.

## A.

Under *Thomas,* we look first at the seriousness of the defendant's conduct. We consider the "specific facts of the case, not only as to the crime but also as to the criminal." *Thomas,* 333 Md. at 96, 634 A.2d at 7. Appellee's conviction in this case is for possession and distribution of 3.5 grams of cocaine, commonly referred to as an "eightball." In *Harmelin,* Justice Kennedy summarized the danger created by illegal drugs as follows:

"Possession, use, and distribution of illegal drugs represent one of the greatest problems affecting the health and welfare of our population. Petitioner's suggestion that his crime was nonviolent and victimless, echoed by the dissent, is false to the point of absurdity. To the contrary, petitioner's crime threatened to cause grave harm to society.

Quite apart from the pernicious effects on the individual who consumes illegal drugs, such drugs relate to crime in at

reviewing court may consider. *Thomas v. State,* 333 Md. 84, 96, 634 A.2d 1, 6–7 (1993). The court may consider the ramifications of the offense upon society as a whole or any evidence, if present, of an improper motive on the part of the sentencing judge. *See id.; see also Mitchell v. State,* 82 Md. 527, 534, 34 A. 246, 248 (1896) (noting that, under Article 25 of the Maryland Declaration of Rights, "[i]f the punishment is grossly and inordinately disproportionate to the offense so that the sentence is evidently dictated not by a sense of public duty, but by passion, prejudice, ill-will or any other unworthy motive, the judgment ought to be reversed, and the cause remanded for a more just sentence.").

least three ways: (1) A drug user may commit crime because of drug-induced changes in physiological functions, cognitive ability, and mood; (2) A drug user may commit crime in order to obtain money to buy drugs; and (3) A violent crime may occur as part of the drug business or culture."

*Harmelin,* 501 U.S. at 1002, 111 S.Ct. at 2705–06, 115 L.Ed.2d 836 (internal quotation marks and citations omitted).

Appellee argues that his conduct is not serious enough to justify the punishment mandated by § 286(d) because he did not possess or distribute a large amount of drugs. He contends that:

"There is nothing in this case to aggravate the nature of distribution, no large quantity was involved. There was no violence, no weapons, none of that stuff, no large amounts of cash. It simply involves the distribution of one hundred and fifty dollars worth of cocaine."

The basic flaw in appellee's argument is his failure to acknowledge that the gravity of this offense is aggravated by the fact that it is a repeat offense.[10] The Legislature has

---

**10.** In assessing the gravity of a defendant's crime, a reviewing court focuses on the gravity of the offense at issue before the court. The Ninth Circuit recently explained the inquiry into the seriousness of a defendant's conduct as follows:

"We examine the punishment in light of the gravity of the offense. We also recognize that a State is justified in punishing a recidivist more severely than it punishes a first offender. *Solem,* 463 U.S. at 296, 103 S.Ct. 3001. But the enhanced punishment imposed for the [present] offense is not to be viewed as ... [an] additional penalty for the earlier crimes, but instead as a stiffened penalty for the latest crime, which is considered to be an aggravated offense because a repetitive one. *Witte v. United States,* 515 U.S. 389, 400, 115 S.Ct. 2199, 132 L.Ed.2d 351 (1995) (quoting Gryger v. Burke, 334 U.S. 728, 732, 68 S.Ct. 1256, 92 L.Ed. 1683 (1948)); *Solem,* 463 U.S. at 297 n. 21, 103 S.Ct. 3001 (We must focus on the principal felony—the felony that triggers the life sentence—since [the defendant] already has paid the penalty for each of his prior offenses. But we recognize, of course, that [the defendant]'s prior convictions are relevant to the sentencing decision.)."
*Andrade v. Attorney General,* 270 F.3d 743, 759 (9th Cir.2001) (internal quotation marks omitted).

determined that recidivism in the arena of controlled dangerous substances poses a grave danger to society and justifies the imposition of longer sentences, including sentences without possibility of parole.

Appellee also fails to recognize that this Court has upheld harsh punishments in cases involving small amounts of drugs. In *State v. Bolden*, 356 Md. 160, 737 A.2d 1086 (1999), we upheld consecutive prison sentences of 25 years and 32 years for a defendant who sold sixty dollars worth of crack cocaine to an undercover police officer. We reasoned as follows:

"Applying the teachings of our prior cases, we hold that the consecutive sentences imposed ... were not grossly disproportionate in length to the crimes being punished. Each consecutive sentence was based upon a very serious crime, the distribution of crack cocaine. The sentences were imposed upon him as a recidivist who was guilty of prior violations of our controlled dangerous substance laws. In imposing the sentences the trial judge based his decision upon the serious threat to the community posed by dealers in crack cocaine and Bolden's escalating pattern of violations of the laws prohibiting the possession and distribution of controlled dangerous substances. The sentences imposed were within the maximum terms prescribed by the Legislature for the criminal conduct of which Bolden had been convicted. Under these circumstances an extended proportionality analysis directed by *Solem v. Helm*, is not required."

*Bolden*, 356 Md. at 168–69, 737 A.2d at 1090.

As demonstrated by the cases above, the crime of possession of cocaine with intent to distribute is a serious crime that poses a significant threat to society. Considered in the context of the factors discussed below, the fact that appellee did not sell a large quantity of drugs does not render his sentence unconstitutionally disproportionate.

### B.

We now turn to appellee's past crimes. Appellee has been convicted of distribution of a controlled substance, or posses-

sion with intent to distribute, on three separate occasions. He served three and a half years in prison before his most recent conviction. These facts weigh heavily against a finding that the mandatory sentence under § 286(d) is grossly disproportionate to his crime.

The Legislature has made it clear that recidivist criminals are to receive harsher punishment than first-time offenders. In *Jones v. State*, 324 Md. 32, 595 A.2d 463 (1991), we found that the requirement in § 286(d) that a minimum of 180 days be served in at least one term of confinement evinces a legislative intent that "those who received the enhanced punishment had been accorded a fair chance at rehabilitation in the prison system and had not responded." *Id.* at 38, 595 A.2d at 466. Likewise, in *Gargliano v. State*, 334 Md. 428, 639 A.2d 675 (1994), we stated that the general purpose of enhanced penalty statutes such as § 286(d) is "to deter the future commission of criminal offenses by persons who have previously been convicted and subject to the threat of punishment." *Id.* at 442–43, 639 A.2d at 682.

As his criminal record reflects, appellee has "been accorded a fair chance at rehabilitation in the prison system and had not responded." *Jones*, 324 Md. at 38, 595 A.2d at 465.

## C.

Finally, we address the articulated purpose of the mandatory sentence under § 286(d). This Court has indicated that sentences based on recidivist history are generally permissible under the federal and state constitutions. *See Thomas*, 333 Md. at 98, 634 A.2d at 7–8; *Epps v. State*, 333 Md. 121, 129 n. 4, 634 A.2d 20, 24 n. 4 (1993). In *Thomas*, where we found a sentence of twenty years for battery to be grossly disproportionate, we stated:

"The sentence is not the result of a recidivist history. The sentence was not based on any legislative or judicial decision to impose severe penalties to deter domestic violence because of its societal impact. In fact, the record indicates that the sentence was based on speculation by the trial

judge concerning the life span of the victim. None of those considerations lend any legitimacy to a sentence that seems to be grossly disproportionate."

*Thomas,* 333 Md. at 98, 634 A.2d at 7–8.

In this case, the mandatory sentence under § 286(d) is based on the Legislature's intent to subject recidivist criminals like appellee to enhanced punishment. In *Gargliano,* we found that the *"clear import* of the language used throughout § 286 is that the Legislature sought to impose more stringent penalties on certain offenders who repeatedly persist in a pattern of criminal conduct." *Gargliano,* 334 Md. at 442, 639 A.2d at 681 (emphasis added). We observed that:

"Recidivist statutes are enacted in an effort to deter and punish incorrigible offenders.... They are intended to apply to persistent violators who have not responded to the restraining influence of conviction and punishment. It is the *commission* of the second felony *after conviction* for the first, and the *commission* of the *third* felony *after conviction* of the second that is deemed to make the defendant an incorrigible."

*Id.* at 444, 639 A.2d at 682 (quoting *Montone v. State,* 308 Md. 599, 609, 521 A.2d 720, 725(1987)) (emphasis in the original).

In light of the foregoing, we find that the sentence of twenty-five years without parole is not grossly disproportionate to appellee's crime, and that no further proportionality review is necessary. Accordingly, the trial court was required to impose the mandatory sentence under § 286(d).

## V.

█ Appellee argues that even if his sentence is not grossly disproportionate to his crime, the trial judge erred in denying him a jury trial on the issue of sentencing. More specifically, appellee argues that he was entitled to a jury trial on the question of whether, pursuant to § 286(d)(1)(i), the State proved beyond a reasonable doubt that he "served at least 1 term of confinement of at least 180 days in a correctional

institution...." Maryland Code (1970, 1996 Repl.Vol., 2000 Supp.) Article 27, § 286(d). We reject appellee's argument.

Appellee relies on *Apprendi v. New Jersey*, 530 U.S. 466, 120 S.Ct. 2348, 147 L.Ed.2d 435 (2000), where the United States Supreme Court held that *"[o]ther than the fact of prior conviction,* any fact that increases the penalty for a crime beyond the prescribed statutory maximum must be submitted to a jury, and proved beyond a reasonable doubt." *Id.* at 490, 120 S.Ct. at 2362–63, 147 L.Ed.2d 435 (emphasis added). To succeed under *Apprendi,* appellee must show that his prior term of incarceration is not a "fact of prior conviction."

The rule that prior convictions do not have to be proven to a jury beyond a reasonable doubt was first recognized in *Almendarez–Torres v. United States,* 523 U.S. 224, 118 S.Ct. 1219, 140 L.Ed.2d 350 (1998). There, the Supreme Court emphasized that questions related to recidivism have traditionally been decided by the sentencing court rather than the jury. Justice Breyer, delivering the opinion of the Court, wrote:

> "First, the sentencing factor at issue here—recidivism—is a traditional, if not the most traditional, basis for a sentencing court's increasing an offender's sentence. Consistent with this tradition, the Court said long ago that a State need *not* allege a defendant's prior conviction in the indictment or information which alleges the elements of an underlying crime, even though the conviction was necessary to bring the case within the statute. That conclusion follow[s] ... from *the distinct nature of the issue,* and the fact that recidivism does not relate to the commission of the offense, *but goes to the punishment only,* and therefore ... may be subsequently decided."

*Id.* at 243, 118 S.Ct. at 1230–31, 140 L.Ed.2d 350 (emphasis in original) (internal quotation marks and citations omitted).

In *Apprendi,* the Court emphasized that it was not overruling *Almendarez–Torres. Apprendi,* 530 U.S. at 489, 120 S.Ct. at 2362, 147 L.Ed.2d 435. In fact, the Court reiterated that recidivism is a traditional grounds for a sentencing court's increasing an offender's sentence, and that recidivism does not

relate to the commission of the offense. *Id.* at 488, 120 S.Ct. at 2361–62, 147 L.Ed.2d 435 (quoting *Jones v. United States*, 526 U.S. 227, 248–49, 119 S.Ct. 1215, 1227, 143 L.Ed.2d 311 (1999)).

As stated above, appellee attempts to avoid the *Almendarez–Torres* exception by arguing that there is a distinction between a prior conviction on the one hand, and incarceration resulting from a prior conviction on the other. Appellee cites no cases in support of his contention, and with good reason— there are no cases to substantiate his claim. In light of the language in *Apprendi* suggesting that sentencing courts traditionally consider matters related to recidivism, *Apprendi*, 530 U.S. at 489–90, 120 S.Ct. at 2361–62, 147 L.Ed.2d 435, courts have found that the *Almendarez–Torres* exception to the right to a jury trial is not limited solely to prior convictions. The general rule is that there is no right to a jury trial on matters related to the broader issue of recidivism. *See, e.g., United States v. Becerra–Garcia*, 28 Fed.Appx. 381, 385, 2002 U.S.App. LEXIS 311, at *11 (6th Cir.2002) (holding that "the 'fact of prior conviction' was broad enough in this case to include the factual determination that the defendant's prior conviction was for an aggravated felony."); *United States v. Gomez–Gonzalez*, 277 F.3d 1108, 1112 (9th Cir.2002) (holding that *Apprendi* does not require that the question whether defendant violated the terms of his supervised release be proved to a jury beyond a reasonable doubt); *United States v. Santiago*, 268 F.3d 151, 156 (2nd Cir.2001) (reading *Apprendi* "as leaving the judge, consistent with due process, the task of finding not only the mere fact of previous convictions but other related issues as well."); *Jones v. State*, 138 Md.App. 12, 25, 769 A.2d 1015, 1023 (2001) (holding that "*Apprendi* does not require a jury determination of prior convictions *or incarceration resulting from those convictions* ").

In *United States v. Santiago*, 268 F.3d 151 (2nd Cir.2001), the trial judge sentenced the defendant pursuant to a statute that required that the defendant have three prior convictions arising from offenses committed on different occasions. The defendant argued that the "prior conviction" exception does

not encompass the question whether prior convictions arose from offenses committed on different occasions. The United States Court of Appeals for the Second Circuit rejected the defendant's argument, reasoning as follows:

> "In short, we read *Apprendi* as leaving to the judge, consistent with due process, the task of finding not only the mere fact of previous convictions but other related issues as well. Judges frequently must make factual determinations for sentencing, so it is hardly anomalous to require that they also determine the 'who, what, when, and where' of a prior conviction."

*Id.* at 156.

■ *Santiago* reflects the general rule that the *Almendarez–Torres* exception covers questions related to recidivism, not merely the fact of prior conviction. Appellee's previous term of incarceration, like prior convictions arising from crimes committed on separate occasions, *Santiago,* 268 F.3d at 156, or the aggravated nature of a prior conviction, *Becerra–Garcia,* 28 Fed.Appx. 381, at 385, 2002 U.S.App. LEXIS 311, at *11, is a fact related to recidivism, and, as stated above, recidivism is a question that traditionally has been reserved for the sentencing court.

Accordingly, we hold that the trial judge did not err in denying appellee a jury trial on the question of whether he had previously served at least 180 days in prison.

*JUDGMENT OF THE CIRCUIT COURT FOR CALVERT COUNTY REVERSED. CASE REMANDED TO THAT COURT WITH INSTRUCTIONS TO VACATE THE SENTENCE IMPOSED AND SENTENCE APPELLEE CONSISTENT WITH THIS OPINION. COSTS TO BE PAID BY APPELLEE.*